## SANTEE CLUB v. WHITE.
### No. 5575.

District Court, D. Massachusetts.
Feb. 14, 1936.

Ropes, Gray, Boyden & Perkins, of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is an action at law to recover a tax assessed against certain income of the plaintiff derived from the sale of real estate in the year 1930. It is the contention of the plaintiff that its income is not taxable, because it is a club organized and operated exclusively for pleasure, recrea-

tion, and other nonprofitable purposes, and is exempt from taxation under section 103, paragraph 9 of the Revenue Act of 1928, 26 U.S.C.A. § 103 (9) and note. The defendant contends that as to the particular transaction, the tax was properly assessed against the plaintiff.

The court adopts the following stipulated facts as part of its findings of fact:

"The plaintiff is a corporation, organized and existing under and by virtue of the laws of the State of New York, it having been incorporated in the year 1898.

"During the year 1930, and at the time of filing of plaintiff's declaration in this case in April 1933, the plaintiff corporation had its principal place of business at 60 State Street in the City of Boston, Commonwealth of Massachusetts.

"On February 29, 1932, in compliance with the direction of the defendant in his official capacity as Collector of Internal Revenue for the United States in the District of Massachusetts in a letter dated September 29, 1931, plaintiff filed with the said defendant at his office in Boston, Massachusetts a Federal income tax return (Form 1120) for the year 1930, showing net income for said year in the amount of $4,411.60, and tax due thereon of $169.39.

"The said amount of $169.39, tax shown due on plaintiff's return for 1930, together with interest of $6.35 computed thereon, was paid by plaintiff on February 29, 1932, and said amount was duly assessed by the Commissioner of Internal Revenue on his Supplemental 1932 assessment list.

"On February 29, 1932, plaintiff executed and filed with the defendant at his office in Boston, Massachusetts, its claim for refund of the aforesaid amount of $169.39, income tax paid defendant for the said year 1930.

"In a letter, dated January 16, 1933, the Commissioner of Internal Revenue advised plaintiff that its claim for refund would be rejected, and on February 27, 1933, plaintiff was advised by registered mail of its formal rejection on a schedule dated February 27, 1933.

"No part of the claim described in the plaintiff's declaration has been assigned or transferred and no part of the amount claimed has been repaid to the plaintiff and there are no credits or offsets against the said claim."

In addition, the court makes the following findings: The plaintiff is a corporation organized under "The Membership Corporation Law" of the state of New York, which law does not include within its scope corporations organized for pecuniary profit.

The objects of the club as set forth in its constitution are:

"(1). To acquire tracts of land in the State of South Carolina, and to use and maintain the same as a private preserve for the benefit of its members for the purpose of hunting, fishing, yachting, health, rest and recreation.

"(2). To raise, propagate, preserve and capture wild game, birds, wild fowl, fish, shell-fish, terrapin, cattle or other live stock, for the use and benefit of the Club.

"(3). To raise such plantation, farm and garden products, upon real estate owned by the Club, as the Club may desire, and to sell or otherwise dispose of the same."

The club owns and operates a large shooting preserve in the states of South Carolina to which its members go from time to time for recreation and sport. Membership in the club is restricted, although under some circumstances there is a saleable market for shares in the club. Shares sold in 1916 for $3,000, later rose to $6,000, and recently had a saleable value of approximately $700.

On February 29, 1932, the plaintiff paid to the collector of internal revenue the sum of $169.39 with an additional payment of interest in the amount of $6.35 which was duly assessed by the collector of internal revenue on his supplemental 1932 list. This tax was assessed on a net income of $4,411.60 during the year 1930, the said income having been derived from the sale of a piece of the plaintiff's land. The amount sold represented less than 2 per cent. of its entire holdings. The government contends that in making this sale it did so under an authority granted under Article IV, section 3 of the club constitution, which empowered it "to mortgage, sell, lease or otherwise dispose of any or all of the lands and properties of the Club." It further contends that the sale comes within Article 530 of Regulations 74 of the Treasury Department which provides that "If a club by reason of the comprehensive powers granted in its charter, engages in traffic, in agriculture or horticulture, or in the sale of real estate, timber, etc., for profit, such club is not organized and operated exclusively for pleasure,

recreation, or social purposes, and any profit realized from such activities is subject to tax."

The plaintiff contends that it is exempt from the payment of income tax on this transaction by reason of the fact that the transaction here involved was merely an incident to the consummation of the general purposes for which it was formed; namely, the maintaining and operation of the shooting preserve.

It is clear that the club in its organization was organized for pleasure, recreation, and other nonprofitable purposes. Whether or not it has been operated exclusively for pleasure, recreation, and other nonprofitable purposes, and whether its net earnings with respect to this transaction have inured to the benefit of its shareholders appear to be the main questions in the case.

It is clear that when Congress adopted the tax law, it exempted certain educational, charitable, and religious organizations from payment of taxes probably under the theory that the direct or indirect benefits gained by the public from their operation were of greater value to the government than a tax on their income would be. It further exempted certain social clubs as defined under Section 9 on the theory that the securing and handling of their returns were likely to be sources of expense and annoyance beyond the possibilities of the successful recovery of taxes.

It is perfectly plain, however, that in order to come within the exemption as defined in section 9, the plaintiff must show:

(1) That it was organized exclusively for pleasure, recreation, and other nonprofitable purposes; and

(2) That it has been operated exclusively for pleasure, recreation, and other nonprofitable purposes; and

(3) That no part of its net earnings inured to the benefit of any of its shareholders.

As to the land involved in the transaction which the government has taxed, I find that the club acquired this property as a part of an acquisition in 1925, purchasing it for the general use of the club members for duck shooting. There was no intent at the time of the purchase to resell this land at a profit. By the year 1930 the property in question had lost its value for duck shooting purposes due to the growth of a certain feed destroying weed over this land, and further due to the fact that the club, by developing other portions of its preserve, had lured the ducks away from the land in question. It was plainly valueless to the club for duck shooting purposes or for any other purpose associated with the general scheme of the club. In disposing of this property in 1930, the club exchanged that which was valueless and a liability in so far as the purposes for which the club was organized or concerned for an amount in cash which went into the club treasury. This transaction gave the club a clear profit over its cost of $4,411.60, and this amount was a net earning to the club.

So long as a club organized under section 9 operates without a profit, except such a profit as may be merely incidental to the successful accomplishment of its purposes, its income is not taxable. When, however, as in this transaction, it enters into the ordinary channels of trade for profit, it is then not acting strictly in conformity with the purposes for which it was organized.

Nor can it be contended that the profits realized from the sale of this real estate did not inure to the benefit of the shareholders. Certainly the $4,411.60 profit made on the sale of real estate went into the hands of the club to be expended for such purposes as it deemed advisable, and such expenditures will inure to the benefit of the shareholders. Such purposes could not have been accomplished unless the fund were in the possession of the club, or unless a similar sum were raised by contribution from the shareholders. It is to their benefit to have improvements to the extent allowable by this fund without recourse to the expenditure of their own individual money. The plaintiff may contend that it has merely exchanged one club asset for another, i. e., land for money. The complete answer to this is that for the purposes for which the club was organized, the land was not only valueless, but was a liability. They have exchanged this valueless land and a liability for an amount of cash with which improvements may be made which will inure to the benefit of the individual shareholders, in that their individual shares will be made more valuable in proportion to their holdings in the club. Clearly, Congress did not intend to exempt such income from taxation, and indeed there is no reason suggested why such income should be exempt. The shareholders

in the club received a benefit to the extent that these earnings were paid into the club treasury, and such income is taxable.

The plaintiff's motion for judgment is denied, and the defendant's motion for judgment is granted. The defendant's requests for rulings of law are granted. The plaintiff's requests for findings of fact are granted in so far as they are consistent with this opinion, and are denied in so far as they are inconsistent.